IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————

CHRISTINA CARTER, a married woman, *Plaintiff/Appellant*,

*v.*

THE PAIN CENTER OF ARIZONA, P.C., an Arizona professional corporation; DAVID K. TOWNS, M.D. and GABRIELA TOWNS, husband and wife, *Defendants/Appellees*.

No. 1 CA-CV 14-0672
FILED 5-10-2016

———————————

Appeal from the Superior Court in Maricopa County
No. CV2011-054196
The Honorable Thomas L. LeClaire, Judge, Retired

**REVERSED AND REMANDED**

———————————

COUNSEL

Law Office of Craig Stephan, Scottsdale
By Craig A. Stephan
*Counsel for Plaintiff/Appellant*

Kent & Wittekind, PC, Phoenix
By Richard A. Kent, Scott A. Ambrose
*Co-Counsel for Defendants/Appellees*

Jones Skelton & Hochuli, PLC, Phoenix
By Eileen Dennis GilBride
*Co-Counsel for Defendants/Appellees*

---

## OPINION

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Kent E. Cattani and Judge John C. Gemmill joined.

---

**J O H N S E N**, Judge:

**¶1**        Although a traditional civil battery claim requires proof the defendant intended to commit harm or offensive contact, a plaintiff suing for medical battery need not prove the defendant acted with such intent. In this case, a patient alleged a physician committed medical battery by disregarding her conditional consent to a medical procedure. A patient who brings such a claim must prove the defendant willfully disregarded the scope of the patient's consent. Because the superior court in this case instructed the jury based on traditional common-law battery rather than on medical battery, we reverse the defense judgment and remand for a new trial.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        After a fall, Christina Carter met with Dr. David Towns of The Pain Center of Arizona, who recommended a sacrococcygeal ligament injection for her pain. When Carter expressed anxiety about the injection, Towns offered to sedate her for the procedure. In the notes he made after the appointment, Towns confirmed that he would do the procedure with sedation. Twelve days later, Carter returned for the injection. Before undergoing the procedure, Carter signed a consent form stating:

> I, Christina Carter . . . hereby authorize and consent to the treatment as ordered by Dr. David Towns, and any other physician or medical personnel who may be directly involved in the course of my treatment. I hereby authorize and consent to the following procedure described to be performed: Sacrococcygeal Ligament Injection under Fluoroscopy with IV Sedation.

Towns then proceeded to administer the injection without first sedating Carter.

**¶3**        Some time later, Carter sued Pain Center and Towns, alleging battery and false imprisonment based on the defendants' failure to sedate

her prior to the injection. Before trial, Carter requested the following jury instruction:

> Christina Carter claims that Dr. David K. Towns committed a battery against her. On this claim, Christina Carter must prove:
>
> 1. Christina Carter's consent to the sacrococcygeal ligament injection was conditioned upon receipt of IV sedation; and
>
> 2. Dr. David K. Towns performed the sacrococcygeal ligament injection in willful disregard of the conditional consent given by Christina Carter; and
>
> 3. Christina Carter's damages.

¶4 Defendants objected to Carter's proposed instruction and asked the superior court to give the following traditional civil battery instruction found in the Revised Arizona Jury Instructions ("RAJI") as Intentional Torts 2:

> Christina Carter claims that The Pain Center of Arizona, PC and Dr. David K. Towns committed a battery against her. On this claim, Christina Carter must prove:
>
> 1. The Pain Center of Arizona, P.C., and Dr. David K. Towns intended:
>
> > a. To cause harm or offensive contact with Christina Carter.
>
> 2. The Pain Center of Arizona, P.C., and Dr. David K. Towns caused harmful or offensive contact with Christina Carter.
>
> 3. Christina Carter's damages.
>
> A contact is offensive if it would offend a reasonable person.

Carter objected to the defendants' proposed RAJI instruction, arguing her proposed instruction more accurately identified the elements of a medical battery. The court overruled her objection and gave the RAJI battery instruction proposed by the defendants.

¶5 Following a five-day trial, the jury returned a defense verdict. Carter unsuccessfully moved for a new trial, arguing the court erred by

refusing to give her requested jury instruction. Carter timely appeals. We have jurisdiction pursuant to Arizona Revised Statutes section 12-2101(A)(1), (5)(a) (2016).[1]

## DISCUSSION

**¶6**        Carter argues the court erred by giving the RAJI battery instruction because, as applied, that instruction turned on whether the defendants intended to harm her or cause an "offensive contact." She contends the issue in a medical battery, instead, is whether the defendant willfully performed an unconsented-to procedure. Whether a jury instruction correctly states the law is a matter of law that we review *de novo. A Tumbling–T Ranches v. Flood Control Dist. of Maricopa County*, 222 Ariz. 515, 533, ¶ 50 (App. 2009). We review jury instructions as a whole to determine whether the jury was properly guided in its deliberations. *Pima County v. Gonzalez*, 193 Ariz. 18, 20, ¶ 7 (App. 1998). We will reverse only if an erroneous instruction prejudiced the appellant's rights. *Am. Pepper Supply Co. v. Fed. Ins. Co.*, 208 Ariz. 307, 309, ¶ 7 (2004).

**¶7**        A medical battery occurs when a physician performs a procedure without the patient's consent. *See*, *e.g.*, *Duncan v. Scottsdale Medical Imaging, Ltd.*, 205 Ariz. 306, 309, ¶ 9 (2003) ("The law is well established that a health care provider commits a common law battery on a patient if a medical procedure is performed without the patient's consent."); *Saxena v. Goffney*, 71 Cal. Rptr. 3d 469, 475 (App. 2008); *Devitre v. Orthopedic Ctr. of St. Louis, L.L.C.*, 349 S.W.3d 327, 334 (Mo. 2011); *Howard v. Univ. of Med. & Dentistry of New Jersey,* 800 A.2d 73, 80 (N.J. 2002) (medical battery "is reserved for those instances where either the patient consents to one type of operation but the physician performs a substantially different one from that for which authorization was obtained, or where no consent is obtained"); *Blanchard v. Kellum*, 975 S.W.2d 522, 524 (Tenn. 1998).

**¶8**        Likewise, medical battery also occurs when a physician performs a procedure in willful disregard of a patient's limited or conditional consent. *See Duncan*, 205 Ariz. at 310-11, ¶¶ 15-18. The patient in *Duncan* alleged she had consented to be sedated with certain drugs but not others, and that doctors had injected her with a drug to which she had not consented. *Id.* at 310-11, ¶ 15. The court explained that a medical battery claim is based on the "doctor's failure to operate within the limits of

---

[1]        Absent material revision after the relevant date, we cite a statute's current version.

the patient's consent." *Id.* at 310, ¶ 13. Citing Restatement (Second) of Torts (1965), *Duncan* explained the significance of consent in such a claim:

> The Restatement requires that consent, to be effective, must be "to the particular conduct, or substantially the same conduct." Restatement § 892A(2)(b). The terms and reasonable implications of the consent given determine the scope of the particular conduct covered. Restatement § 892A cmt. d. The "scope" of consent is an issue for the trier of fact to determine.

*Id.* at 311, ¶ 16. The court then concluded: "We hold that when a patient gives limited or conditional consent, a health care provider has committed a battery if the evidence shows the provider acted with willful disregard of the consent given." *Id.* at ¶ 18.

**¶9**        Defendants in this case argue the RAJI battery instruction is appropriate when a medical battery is based on a total lack of consent, and contend Carter waived the issue by failing to make clear to the superior court that her claim was based on conditional consent. The RAJI instruction the court gave, however, required Carter to prove that the defendants "intended . . . [t]o cause [Carter] harm or offensive contact." Contrary to defendants' assertion, a patient who alleges medical battery based on a total lack of consent (for example, the patient consented to one procedure and another was performed) need not prove that the physician intended to cause harm or offensive contact. Under *Duncan* and related cases, such a patient need only prove she was damaged when the physician performed a procedure to which she did not consent. *Id.* at 309, ¶ 9; *Hales v. Pittman*, 118 Ariz. 305, 310 (1978). The instruction Carter proposed was true to the holding of *Duncan*; it would have required her to prove that her consent to the pain treatment was conditioned upon receiving sedation and that Towns administered the treatment "in willful disregard of the conditional consent." *See Duncan*, 205 Ariz. at 311, ¶ 18.[2]

**¶10**        Citing *Hales*, defendants argue that even though the instruction the court gave did not address consent, it was Carter's obligation, not the court's, to explain to the jury in closing how consent applied to her claim. But consent is not, as defendants contend, a mere "refinement" to the required intent to harm or offensive contact in the RAJI

---

[2]        Further, contrary to defendants' assertion, Carter's complaint and her proposed jury instruction both made clear that her claim was that the consent she gave to the injection was conditioned on her receiving sedation.

instruction. As *Duncan* made clear, consent is the fulcrum on which a medical battery claim such as Carter's turns. 205 Ariz. at 311, ¶ 18. Indeed, *Hales* held that the jury instructions given there were proper because they adequately addressed whether the procedure was performed "without the patient's consent." 118 Ariz. at 310-11; *see also Cathemer v. Hunter*, 27 Ariz. App. 780, 785 (1976) (jury may determine whether medical procedure fell within scope of patient's consent).

¶11            Defendants also argue Carter's counsel cured any error when he explained to the jury in closing argument how the instruction the court gave might be construed to impose liability in the absence of intent to harm. Defendants' contention is belied by their own counsel's vigorous closing argument to the contrary: "[Battery] requires that Dr. Towns had an intent to harm. That is what your jury instruction says, and don't let any argument from any attorney allow you to change what the jury instruction actually says. It's intent to harm." Defendants' counsel reiterated the "intent to harm" refrain several more times during closing. This plainly is not a situation in which counsel's closing argument cured instructional error. Moreover, closing arguments "generally carry less weight with a jury than do instructions from the court." *Boyde v. California*, 494 U.S. 370, 384 (1990). This is particularly true when, as here, the parties' lawyers argued conflicting versions of the law and, rather than properly instruct the jury on which was correct, the court instead gave an instruction that permitted the incorrect argument.

¶12            Defendants further argue that even if the battery instruction was error, Carter cannot show prejudice. *See Am. Pepper Supply*, 208 Ariz. at 309, ¶ 7 ("To warrant reversal, the jury instruction must have been not only erroneous, but 'prejudicial to the substantial rights of the appealing party.'") (citations omitted). Defendants assert the jury could have found in their favor because it concluded Carter consented to the injection without sedation or that she did not prove damages. We will not engage in such speculation. Carter objected to the instruction given and, on this record, if the jury had been properly instructed, it could have found that Carter's consent to the injection was conditioned on her receiving sedation and that defendants willfully disregarded the limited scope of her consent. *See Melancon v. USAA Cas. Ins. Co.*, 174 Ariz. 344, 347 (App. 1992) ("A jury verdict cannot stand if the instructions given create substantial doubt as to whether or not the jury was properly guided in its deliberations.").

¶13            Defendants also contend Carter had a duty to request jury interrogatories from which, in the event of a defense verdict, it might be ascertained whether the jury found against her based on liability or on

damages. Not so. When a party has requested a jury instruction that is supported by the facts and correctly states the law, but the court declines to give the instruction and instead gives an erroneous instruction, there is no requirement that the aggrieved party request special interrogatories to prove prejudice.

**CONCLUSION**

¶14 For the reasons stated above, we reverse the defense judgment on Carter's claim for medical battery and remand for a new trial.[3]



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[3] Carter does not argue on appeal that the defense verdict on her claim for false imprisonment should be reversed.